All right, our next case is People v. Jared Peoples, 5-19-0194. Are you ready? Yes, sir. My name is Derek Siegel and I represent the appellant in this case, Jared Peoples. There are three primary issues on appeal. One is whether it was proper to try the defendant in his absence when he was in the hospital for an apparent suicide attempt and drug overdose. The second issue is whether his Sixth Amendment rights were violated when he was incorrectly informed of his possible maximum sentence by the court and by his trial counsel. And as a corollary to that issue, whether his waiver of a jury trial was understandingly made. The third main issue is whether there was sufficient evidence to convict him of the loan pending count at trial. The first two issues in the appellant's brief, I believe, are issues of first impression for this court because Illinois cases that analyze whether a criminal defendant must be informed of the correct sentencing range usually do so in the context of a guilty plea or the waiver of counsel. But in this case we have an unusual agreement where the state was agreeing to dismiss three of the counts against the defendant if he would agree to waive his right to a jury trial and proceed to a bench trial. So in this sort of situation, his potential sentence became a consequence of his jury trial waiver. And there was a vast difference between the two sentences of which he was admonished. He was admonished that his maximum sentence on any one count would be 30 years when in actuality the maximum sentence for each count was 60 years. The Illinois case law on whether a hospitalization constitutes a voluntary waiver of the right to be present at trial do not address a hospitalization as a result of an attempted suicide. So that's why I say that issue is an issue of first impression for this court as well. Jared Peoples was arraigned on a four-count criminal information, charging him with predatory criminal sexual assault of a minor under the age of 13. This is when Mr. Peoples' constitutional rights were first violated. At the arraignment, the court told Mr. Peoples that he was subject to a term of no more than 30 years on each count when in actuality he was subject to a maximum of 60 years on each count because of the alleged victim's age being under 13. Also at the arraignment, the court failed to admonish Mr. Peoples that he could be tried in his absence. Throughout the pretrial proceedings, Mr. Peoples' attorney also incorrectly advised him that his maximum sentence on each count was 30 years. And Mr. Peoples faced the decision to waive a constitutional right on this incorrect information. The first major decision Mr. Peoples faced in this case was whether to waive his constitutional right to a jury trial. Trusting the lawyers who brokered an unusual agreement, he chose to waive that right. The deal was that the state would voluntarily dismiss three of the counts against him if he waived his right to be tried by 12 of his peers. He weighed his options and decided that he was better off halving his potential sentence to 30 years. He did not know that he could actually be sentenced to 60 years. If Peoples beat Bannister, the Illinois Supreme Court held that sentencing was not a consequence of defendant's jury trial waiver. However, the Bannister Court also held that the determination cannot rest on any precise formula but rather depends on the facts and circumstances of each case. Unlike here, in Bannister, there was no agreement that the state would dismiss charges in exchange for the defendant's jury trial waiver. Also in Bannister, the defendant was advised that he could receive a death penalty on the most serious charge a month prior to his jury trial waiver. And he ultimately was sentenced to death. He was challenging the incorrect information he received about sentences that were ordered to run concurrent to his death sentence. So he was admonished of the maximum penalty for the most serious crime, and he ultimately received that. Whereas here, Mr. Peoples received a sentence in excess of the 30-year maximum of which he was admonished. He was ultimately sentenced to 35 years. So the misinformation in Bannister did not affect the defendant's decision, and that is a key distinguishing fact here. Bannister never articulated how being misinformed about sentences that certain crimes carried would affect his right to waive a jury. Here, Mr. Peoples stipulated in his post-sentence emotions that he would not have waived a jury had he known that he could be sentenced to more than 30 years on any one count. Also, there's no evidence in the record whatsoever that he was ever properly admonished as to the maximum sentence for each count. The incident case is more similar to Peoples v. Curry, where the Illinois Supreme Court held that the defendant received ineffective assistance of counsel when his attorney advised him that he was subject to concurrent sentences. It was objectively unreasonable for defense counsel to misstate the maximum penalty, and the defendant stipulated that he would have pled guilty. He would have taken a plea deal, which involved dismissing two of the three counts against him, had he known that he would have been subject to consecutive sentences on all three counts. So the advice of counsel in Curry was objectively unreasonable, like it was here, and it affected his decision-making pretrial, like it did here. Although Mr. Peoples would not have pled guilty to anything, it affected his jury trial waiver decision. He would most certainly have agreed to 12 of his peers deciding his case rather than one decision-maker, had he known he was subject to a 60-year sentence. The other issue of first impression was here, which I addressed in the first section of my brief, was whether Mr. Peoples' absence from trial was voluntary. The first and only time Mr. Peoples was advised in open court on the record that a trial could proceed in his absence was at the jury trial waiver hearing. The court merely admonished Mr. Peoples that a trial could proceed in his absence and that he would be foregoing, quote, several rights if he failed to appear on August 21, 2017 for trial. The court did not specifically state that he would be foregoing the constitutional right to confront witnesses or to testify on his own behalf, and it referenced a trial date that was later continued. Even if this incomplete and nonspecific admonishment constitutes substantial compliance, the trial court erred when it found at three different junctures that Mr. Peoples was voluntarily absenting. First, the trial court erred when it denied a continuance on the first morning of trial, despite having information that the defendant was seen in the hospital at approximately 3.30 a.m. that morning. It chose to proceed despite such information because his counsel was unable to confirm or deny whether or not Mr. Peoples was actually in the hospital. Where did he get the information? He said the trial counsel didn't know, but who advised the court? A sheriff's deputy who was at the hospital on an unrelated matter. So a sheriff's deputy told the trial judge that another sheriff's deputy told him that he saw him in the hospital at 3.30 a.m. that morning. And then the court erred again when it denied defense counsel's request for a continuance at 1.21 p.m. that same day after all the necessary witnesses had testified other than the defendant. Defense counsel advised the trial court that the defendant wanted to testify on his own behalf. But the court again denied a continuance and ordered the attorneys to proceed to closing argument. Do you attach any significance to the fact that this was a bench trial and not a situation where the court would have been encumbered, for instance, with a jury waiting there to make a further inquiry, sending someone to the hospital, perhaps a relative who might get around the confidentiality issues, to find out exactly what the situation is at the hospital with the defendant being there? Absolutely, Your Honor. I attach a lot of significance to the fact that this was a bench trial with only local lay witnesses that did not require a lot of testimony. I mean, this took less than a full day of court proceedings. It even started late, and I think they finished right around 2 p.m. So in this case, they did not have to excuse a bunch of jurors. They did not have to rearrange experts' schedules, people who were coming from out of town. These witnesses who testified for the state appeared friendly for the state, and they testified for a short time. I don't think it would have been that much of an inconvenience to continue the trial a little bit, but I think you may be asking whether a family member or someone else could have gone and confirmed this, and I don't know that there was a family member there with the authority to receive that information. There was a grandpa and a fiancée there, and I don't know that the hospital would have been allowed to provide them information unless they're listed as an active care. Your Honors, counsel, may it please the court, Kelly Stacey appearing on behalf of the state here today. In order for a trial to occur in absentia in evidence of a crime, the court has decided that the defendant is to appear in absentia. A defendant must first be admonished that his trial could occur in his absence. A defendant may effectively waive his presence at trial by voluntarily absenting himself from his trial and from the court. In order to proceed to a trial in absentia, the court is required to give certain admonishments to a defendant, and those are found at 725 ILCS 5-113-4C. That section provides that if a defendant enters a not guilty plea, which is what we have here, the court shall advise him that if he escapes from custody or is released on bond and fails to appear in court, his failure to appear constitutes a waiver of his right to confront witnesses against him and trial could proceed in his absence. In this case, there were multiple pretrial hearings set, but there was a final pretrial hearing set for August 3, 2017. Defendant appeared on that date and waived his right to a jury trial. The trial court on that date gave the defendant the required admonishments for trial in absentia. The court informed the defendant that his attorney would do his best to represent him if the defendant failed to appear, and the court told the defendant he would be giving up rights that a person who is present for trial would be able to enjoy, such as being able to assist in his defense. The defendant informed the court he understood those rights, and he understood that if he failed to appear for his trial on August 21, 2017, there could still be a bench trial that day. The day before trial was set, defendant and his attorney appeared in court requesting a continuance so that the defendant could hire another attorney. Because there was no attorney already retained ready, willing, and able to represent the defendant to appear in court that following day, the trial court denied the motion to continue and also denied the motion for leave to withdraw as counsel. Predictably, the next day, the defendant failed to appear in court for his trial, and the court ascertained the defendant was not anywhere in the courthouse. The call was made by a bailiff. Defendant didn't appear. And the State argued, again, Mr. Veldman, the attorney, moved to continue the trial. The State argued that the defendant voluntarily absented himself from his trial, and the trial should go ahead and proceed in his absence. So the trial court looked back at the admonishments given to the defendant concerning trial in absentia. The trial court found that the admonishments had been given and that there was no suitable explanation as to why defendant wasn't in trial that day. So the court denied Mr. Veldman's motion to continue. Constitutional protections were provided here. Admonishments were given in open court as required with regard to trial in absentia, and defendant was also represented by counsel throughout his entire trial, even though he was not there. This court should find the trial court substantially complied with the admonishments because defendant failed to establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. The trial court properly denied defendant's motion to vacate his in absentia conviction. So we heard today about a suicide attempt, and the court actually did look at the circumstances surrounding this suicide attempt. The court believed the suicide attempt seemed to be contrived in order for the defendant to avoid court. The trial court found there was a relatively low number of Tylenol taken. I believe the court determined that 20 Tylenol pills were taken. The defendant also arranged a ride for himself to the hospital after he took the medication, and the cuts defendant made to himself were not deep cuts. They were merely superficial. So the trial court believed that the defendant did not meet his burden of proving that it was both without his fault and due to circumstances beyond his control. So the state believes that that was the correct decision by the trial court. Defendant argues that he would not have waived jury for a bench trial if he had been advised of the correct sentencing at arraignment. The trial court did not buy that excuse either. The reason the trial court didn't believe that excuse is regardless of whether it's a jury trial or a bench trial, it's the same sentencing range. So a jury waiver has really nothing to do with the sentencing, and the court did not buy that explanation. If the defendant had argued that he would not have pled guilty but for the incorrect sentencing admonishments, I think his argument would make a lot more sense. But here he did not plead guilty. He merely waived his right to a jury trial. The cases cited by defense, the defense in their brief, are cases concerning waiver of counsel and cases concerning guilty pleas. None of that occurred here. So those cases are inapposite. Turning now to the last issue raised by the defendant, and that is the sufficiency of the evidence to convict the defendant of predatory criminal sexual assault. In addition to L.K.'s testimony, under 725 ILCS 5-115-10, statements made by a minor to people at the Amy Center come in as substantive evidence. So in this case, what we have is L.K.'s interview at the Amy Center. Again, it comes in substantively in addition to her testimony at trial. Six-year-old L.K. described defendant forcing her to perform oral sex on him. L.K. described defendant's penis was erect and that after he made her put her mouth on his wrong spot, something like white pee came out. Certainly, this is knowledge well beyond that that a six-year-old would be expected to know. Her statements and her testimony, but especially those statements made at Amy Center at the time when she was six years old, just after all of these events happened, those statements established the crime of predatory criminal sexual assault of a child. The state does not believe anything raised here today should overturn his conviction. And based upon that, the state respectfully asks you to affirm. Thank you, Your Honor. Thank you. Counsel, you have five minutes to rebut. Thank you. With the issue of absentia, it was no longer defendant's fault and due to circumstances beyond his control when he was in the ICU unit under suicide watch. This case is similar to cases from other jurisdictions where someone chooses to break the law on the way to court and they're detained. Well, they voluntarily chose to break the law, but at the point that they're sitting in a jail cell, they can no longer be present at trial. It's no longer their choice. He was incapacitated in the ICU under suicide watch. And with regard to the sufficiency of the evidence, Your Honors, the evidence presented at trial was contradictory and woefully insufficient to convict the defendant of the wrong pending charge of penis to mouth contact with Jane Doe between October 2014 and January 2015. Those dates are very important because L.K.'s mom testified, Ms. Cara Dunneke, that they moved into a trailer in October 2014. This is where they were living, the trailer in Central City between October 2014 and January 2015. When asked at trial, when L.K. was asked at trial whether anything happened between her and Mr. Peoples at the trailer, she said no. And when asked at trial whether he had her touch him in any way, she said no. The only thing she testified to at trial was that at some point in time, actually she said that it happened at the Brown House where they lived from February 2011 to December 2013. She said at some point in time while living there, he touched her outside her underwear with his hand. That is not penetration under the statute for predatory criminal sexual assault of a child. And her live testimony refutes anything she said in the CAC interview. Her mom said something interesting on the stand. Her mom said she testified that I did not believe her in the beginning because she, quote, lied in the beginning, end quote, and because she was doing well in school. The trial record does not bear out what she lied in the beginning about, but a reasonable fact finder could infer that she lied at some point during the CAC interview. There were some sort of details that were found to be untrue. I don't know what because the trial record is incomplete in that regard and defense counsel didn't dive deeper there. But we've got a complaining witness who testifies on the stand that no penis to mouth contact occurred and testified that nothing happened during the relevant time frame that's in the indictment. So that no rational trial factor to those circumstances could find the defendant guilty beyond a reasonable doubt for the charged crime. We ask that you vacate or reverse his conviction and remand for further proceedings. But in your inherent authority, you also have the ability to reduce the charge for which he was convicted to aggravated sexual abuse, a class two felony. The diagnosis of the defendant after the situation where he's on suicide watch, I think the medical records indicated that the diagnosis was accidental or unintentional drug overdose. Was that just an entry into the records or was that a medical determination by a qualified medical personnel? Well, to be perfectly honest with you, the information in the medical records in that regard is conflicting because it does say at one point in a note that it was accidental overdose. And then a doctor's note says it was intentional overdose. But again, whether or not you find that his decision to consume copious amounts of pills and alcohol was voluntary once he was in the ICU unconscious under suicide watch, it was no longer voluntary. And how important is the fact that the defendant's mental illness, the component of that existed long before this particular situation? That is a good point, Your Honor, because he was diagnosed bipolar. He did have suicide ideations. He did have severe depression. So there is an argument to make, most certainly, that his attempted suicide was not voluntary given his mental problems, although that wasn't fleshed out fully in the lower court. But there is most certainly an argument to make there if you think about the context of addicts, whether or not they're voluntarily consuming drugs when they're addicted. He had substance abuse issues noted in his records as well, I believe, both in the medical records that were submitted from the day of his suicide attempt and in the post-sentencing investigation records. And I also want to note that there was more than just Tylenol found in his system. He took a bottle of Tylenol PM, but there was also Xanax and Diazepam, I believe, was also found in his system. So he's got three different types of drugs, four if you count the alcohol. The bottle of Tylenol PM, though, was the voluntary attempt to kill himself. Thank you. Thank you. The court will take the matter under advisement on the issue of ruling in due course. All right.